United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ANGELA E.,[1] §<br>§<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>KILOLO KIJAKAZI,[2] §<br>Acting Commissioner of Social §<br>Security, §<br>§<br>*Defendant.* § | No. 4:21-cv-0149 |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Angela E. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[3] The Parties

---

[1] The Court uses only Plaintiff's first name and last initial. *See* "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions," Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018).

[2] The suit was originally filed against Andrew Saul, the prior Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

[3] On March 30, 2022, the case was transferred on the consent of the parties to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 17.

filed cross-motions for summary judgment, Pl.'s MSJ, ECF No. 23; Def.'s MSJ, ECF No. 27, and Plaintiff filed a reply, Pl.'s Reply, ECF No. 29. In six points of error, Plaintiff challenges the Administrative Law Judge's ("ALJ") determination, arguing that the finding that Plaintiff is not disabled was not supported by substantial evidence and is the result of legal errors. ECF No. 23 at 30-31. Defendant counters that substantial evidence supports the ALJ's determination, and it should be affirmed. Def.'s MSJ Brief, ECF No. 28 at 16. Based on the briefing, the law, and the record, the Court determines that Plaintiff's arguments are without merit because substantial evidence supports the ALJ's determination. Therefore, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

## I.   BACKGROUND

Plaintiff is 51 years old, R. 36, 213,[4] and completed the 9th grade. R. 114, 451. For over twenty years, Plaintiff worked as a customer service representative. R. 146-47. Plaintiff alleges a disability onset date of July 6, 2015. R. 37, 214. Plaintiff claims she suffers physical impairments that prevent her from working. R. 163.

On March 1, 2016, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 371. Plaintiff based her application on a tumor

---

[4] "R." citations refer to the electronically filed Administrative Record, ECF Nos. 14–15.

in her throat, a deteriorating disc, and a blood clot in her leg. R. 163.[5] The

Commissioner denied her claim initially, R. 179, and on reconsideration, R. 199.

A hearing was held before an Administrative Law Judge ("ALJ"). R. 56–106.

An attorney represented Plaintiff at the hearing. R. 56. Plaintiff and a vocational

expert testified at the hearing. R. 57. The ALJ issued a decision denying Plaintiff's

request for benefits. R. 202–15. On appeal, the Appeals Council remanded the case

for consideration of a new MRI taken after the ALJ's decision. R. 224–27. The same

ALJ held a second hearing. R. 107–61. The same attorney represented Plaintiff at

the hearing on remand. R. 108. Plaintiff and a vocational expert testified at the

hearing. R. 109. The ALJ issued a decision, again denying benefits. R. 21–47.[6] The

---

[5] The relevant time period is July 6, 2015—Plaintiff's alleged onset date—through December 31, 2020—Plaintiff's last insured date. R. 24, 27. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Courtney B. v. Kijakazi*, No. 4:19-CV-04525, 2021 WL 4243512, at *1 (S.D. Tex. Sept. 17, 2021) (citing *Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000)).

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). On remand, the ALJ determined Plaintiff was not disabled at step five. R. 37. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 27 (citing 20 C.F.R. § 404.1571, *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine with foraminal lumbar stenosis, deep vein thrombosis of the left leg, status post stent placement, chronic gastritis, and hiatal hernia. R. 27 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments that would lead to a disability finding. R. 27–28 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Between step three and four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) and included additional limitations. R. 28. At step four, the ALJ determined that Plaintiff could not perform past relevant work as a customer service representative. R. 35 (referencing 20 C.F.R. 404.1565). At step five, based on the testimony of the vocational expert and the record, considering Plaintiff's age, education, work experience, and

3

Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits. R. 1–4.

Plaintiff filed this appeal. Pl.'s Compl., ECF No 1. Plaintiff seeks reversal of the ALJ's determination and an award of benefits, or in the alternative, remand for additional administrative proceedings. ECF No. 23 at 31. Defendant asks the Court to affirm the decision because it is supported by substantial evidence. ECF No. 28 at 16.

## II.   THE STANDARD OF REVIEW OF THE COMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record

---

RFC, the ALJ determined Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, including a sorter, final assembler, surveillance system monitor, order clerk, callout operator, or charge account clerk. R. 36–37. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 37.

as a whole and whether the proper legal standards were applied. *Id.*; *Conner v. Saul*, No. 4:18-CV-657, 2020 WL 4734995, at *2 (S.D. Tex. Aug. 15, 2020) (citing *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Conner*, 2020 WL 4734995, at *2 (quoting *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000)). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the decision. *Conner*, 2020 WL 4734995, at *2 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial

evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Derakhshani v. Saul*, No. 4:18-CV-553, 2020 WL 1650734, at *1 (S.D. Tex. Mar. 25, 2020) (citing *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.* "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Anastasia J. v. Kijakazi*, No. 4:20-CV-2731, 2022 WL 1176753, at *2 (S.D. Tex. Mar. 31, 2022), *report and recommendation adopted sub nom. Jarreau v. Saul*, No. 4:20-CV-02731, 2022 WL 1172991 (S.D. Tex. Apr. 19, 2022) (quoting *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009)).

## III.   THE SHIFTING BURDEN OF PROOF IN A DISABILITY CASE.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988)).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d)(1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant has the "inability to engage in any substantial gainful activity." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Anastasia J.*, 2022 WL 1176753, at *2 (citing *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011)).

The Commissioner applies a five-step sequential process to determine disability status. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Id*. The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* at 754. The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015).

## IV.   PLAINTIFF FAILED TO SHOW REVERSIBLE ERROR AND DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises six issues, asserting the ALJ committed reversible error. First, Plaintiff argues the ALJ improperly evaluated the evidence in formulating Plaintiff's RFC. ECF No. 23 at 7-10. Second, Plaintiff argues that the ALJ incorrectly relied

on two state agency medical consultant ("SAMC") opinions. *Id*. at 10-11. Third, Plaintiff argues the ALJ erred in her evaluation of Dr. Roeser's and Dr. Rudolph's evidence. *Id*. at 11-18. Fourth, Plaintiff argues that the ALJ failed to evaluate the medical opinion of Dr. Doctor. *Id*. at 18-21. Fifth, Plaintiff challenges the ALJ's finding that Plaintiff did not meet the criteria in Listing 1.04A. *Id.* at 21-28. Sixth, Plaintiff argues that the ALJ failed to include all limitations the record evidence supported. *Id*. at 28-30. Defendant responds that substantial evidence supports the ALJ's determinations. ECF No. 28. The Court will consider each argument in turn.

### A. Substantial Evidence Supports The ALJ's RFC Determination.

Between step three and step four of the evaluation process, the ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). The RFC is a "determination of the most the claimant can still do despite [the claimant's] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Choicie H. v. Kijakazi*, No. 4:21-CV-2563, 2023 WL 2634043, at *4 (S.D. Tex. Mar. 24, 2023) (citing *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005)). This evidence includes, but is not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations." *Neill v. Kijakazi*, No. 4:21-CV-01744, 2022 WL 1809309, at *2 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, 2022 WL 2193415 (S.D. Tex. June 17,

2022) (cleaned up); *see Choicie H.*, 2023 WL 2634043, at *4 (citing *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988)).

The RFC determination is the sole responsibility of the ALJ. *Id.* (citing *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012)). As administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record. *See id.* (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [the ALJ's] position." *Id.* (quoting *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)) (cleaned up). The ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence. *Id.* (citing *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993)). Specifically, the ALJ must make "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Michele G. v. Kijakazi*, No. 4:20-CV-00640, 2021 WL 4034064, at *3 (S.D. Tex. Sept. 4, 2021) (quoting *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

Here, the ALJ found that Plaintiff has the RFC to perform sedentary work.

R. 28–35. The Social Security regulations define sedentary work in § 404.1567(a) as

follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one which involves
> sitting, a certain amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ also imposed further non-exertional limitations

on the RFC. R. 28.[7]

Plaintiff contends that the ALJ evaluated the evidence to determine whether

the criteria of Listing 1.04 were met, but not to formulate the RFC. ECF No. 23 at 10.

Citing the most recent MRI, Plaintiff also asserts that "new evidence shows a

significant intervening event and suggests a downward trajectory, or at least a

plateau set below" the sedentary RFC the ALJ found. *Id*. at 11 (citing R. 2563).

These contentions are unfounded.

Plaintiff's argument focused on a single paragraph of the RFC discussion.[8] In

formulating the RFC determination, however, the ALJ reviewed the record evidence

---

[7] The ALJ applied the following limitations: the Plaintiff can occasionally climb ramps and stairs,
but should never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch,
and crawl; could frequently reach in all directions, including overhead, bilaterally; can
occasionally push, pull, and operate foot controls with her right lower extremity; and cannot push,
pull, and operate foot controls with her left lower extremity. R. 28.

[8] The ALJ stated in one paragraph that "[w]hile the June 2018 MRI may suggest a decline in the
claimant's conditions, that decline does not meet or equal the criteria in section 1.04 of the Listing
of Impairments, and the claimant's residual functional capacity, as herein defined has taken into
account the decline noted in the [Appeals Council] remand order." R. 34.

in *fifty-nine paragraphs* that spanned *eight pages*. R. 28-35. The opinion provided a detailed assessment of Plaintiff's medical history, including references to treatment records for her back and lower extremity pain, activities of daily living, symptoms, and medical opinions in the record. *Id.* Furthermore, the ALJ noted improvement in Plaintiff's spinal condition, including a January 2020 emergency room visit, documenting painless full range of motion without tenderness in her back. *Id*. at 33 (citing R. 2749-55). Therefore, in her thorough review of the record, there is nothing to suggest that the ALJ *only* evaluated the evidence for the purpose of its relationship to Listing 1.04, or that the ALJ did not review the new evidence. Quite to the contrary, the listing analysis is in another section of the opinion from the RFC analysis. *Compare* R. 28-35 (ALJ formulating Plaintiff's RFC), *with* R. 27-28 (ALJ determining that Plaintiff did not meet Listing 1.04 requirements).

Even assuming the ALJ had erred in her evaluation of the evidence for formulating the RFC, "Plaintiff would still have the burden of showing prejudice." *Isaac R. v. Kijakazi*, No. 4:21-CV-01654, 2022 WL 4751131, at *8 (S.D. Tex. Sept. 30, 2022) (citing *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)). Here, Plaintiff failed to show in any detail how any evidence would have altered the determination. *Hernandez v. Saul*, No. 18-CV-00055, 2019 WL 4482942, at *7 (W.D. Tex. Sept. 18, 2019) (finding no prejudice where plaintiff failed to show or argue with any specificity that error would have altered the result).

Therefore, substantial evidence supports the ALJ's RFC determination and reversal is not warranted.

## B. The ALJ's Properly Relied on the SAMCs' Opinions.

Plaintiff next contends the ALJ erred because she relied on the outdated medical opinions of two state agency medical consultants ("SAMCs"), Dr. Lucy Saur and Dr. Randal Reid. ECF No. 23 at 10-11. According to Plaintiff, the ALJ should not have relied on these opinions because the doctors did not review any medical evidence after 2016, including the lumbar MRI from June 5, 2018. *Id*. at 10. Plaintiff implies that the ALJ may not give any weight to a SAMC opinion when the SAMC did not review all the evidence in the record. However, Plaintiff identifies no precedent, nor is this Court aware of any, supporting this proposition.

To the contrary, "[a]n ALJ is legally required to evaluate every medical opinion [s]he receives and consider certain factors when deciding how much weight to give the medical opinion." *Ventura v. Colvin*, No. 6:16-CV-16, 2017 WL 1397130, at *6 (S.D. Tex. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 1397131 (S.D. Tex. Mar. 30, 2017) (citing 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c)). "The ALJ may not ignore a SAMC opinion and must explain the weight" she gives to the opinion because these consultants are considered highly qualified and experts in Social Security disability evaluation. *Id.* at *11 (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)).

Additionally, "[t]he ultimate decision whether Plaintiff is disabled rests with the ALJ," not the SAMC. *Id.* at *12 (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(d)(1), (e)(2)(i), 416.927(d)(1), (e)(2)(i)). Therefore, the ALJ, not the SAMC, is responsible for using the full record to make the determination. *Id.* (citing *Woods v. Colvin*, No. 3:15-CV-2355, 2017 WL 563980, at *4 (N.D. Tex. Jan. 20, 2017), *report and recommendation adopted sub nom. Woods v. Berryhill*, 2017 WL 551903 (N.D. Tex. Feb. 10, 2017)).

Here, the SAMCs provided similar though not identical opinions. Dr. Saur opined that Plaintiff could lift less than 10 pounds frequently and 10 pounds occasionally; and could stand and walk for up to 2 hours a day.[9] Dr. Reid opined that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk with normal breaks for a total of 2 hours; sit with normal breaks for a total of about 6 hours in an 8-hour workday; do unlimited pushing and/or pulling; and does not have postural, manipulative, visual, communicative, or environmental limitations.[10] The ALJ gave the SAMCs some weight, explaining the following:

> [t]he examiners had the opportunity to review the entire medical file available at the time, which showed, the claimant routinely had normal physical examinations. Accordingly, the opinions are consistent with the evidence of record available at the time of the review, but more

---

[9] R. 177, 179 (8/01/2016).

[10] R. 196–97 (12/08/2016).

> recent medical evidence supports additional non-exertional limitations
> on the claimant's abilities.

R. 34.

Plaintiff does not dispute that the SAMCs evaluated the record available at the time of their consultations. *See* ECF No. 23 at 10-11. Instead, Plaintiff contends that in relying on the SAMCs' opinions, the ALJ ignored the 2018 MRI. ECF No. 23 at 11. Quite the opposite, the ALJ acknowledged the 2018 MRI, assessed the other evidence that the SAMCs did not review, noted mostly mild findings from the 2018 MRI, and added limitations as a result. R. 33-35. Accordingly, substantial evidence supports the ALJ's decision to give "some weight" to the SAMCs' opinions and thus to rely on the SAMCs' opinions as "somewhat persuasive." R. 34; *see also Ventura*, 2017 WL 1397130, at *12.

But even if the ALJ had erred in her reliance on the SAMCs' opinions, Plaintiff would still have the burden of showing prejudice. *See Isaac R.*, 2022 WL 4751131, at *8 (citing *Jones*, 691 F.3d at 734-35). Here, Plaintiff argues that remand is appropriate so the ALJ can reconsider the 2018 MRI. *See* ECF No. 23 at 11. However, the ALJ stated that the "2018 MRI may suggest a decline in the claimant's conditions," R. 34, indicating that she already considered that evidence. Plaintiff fails to point to evidence that would have altered the results. *See Hernandez*, 2019 WL 4482942, at *7. Thus, any error was harmless.

Therefore, because the ALJ properly relied on the opinions of the SAMCs in consideration with the other medical evidence in the record, neither reversal nor remand is warranted.

**C. Substantial Evidence Supports the ALJ's Consideration of Dr. Roeser's and Dr. Rudolph's Evidence.**

Plaintiff argues that the ALJ failed to evaluate Dr. Roeser's report under the "treating physician rule." ECF No. 23 at 11-13. Plaintiff also argues that the ALJ failed to evaluate Dr. Rudolph's evidence as an "other source." *Id*. at 13-18. The Court addresses each argument in turn.

> ### *1. Dr. Roeser was not a treating physician and the ALJ properly considered the underlying objective medical evidence.*

Plaintiff argues that the ALJ failed to evaluate Dr. Roeser's report under the treating physician rule. ECF No. 23 at 12. Defendant responds contends that Dr. Roeser's report does not contain any opinions. He examined Plaintiff and noted that she may require injections (which she later had as detailed in the ALJ's decision), and he prescribed physical therapy. ECF No. 28 at 10 (citing R. 660-62). Defendant further contends that the ALJ is not required to discuss every piece of evidence in the record. *Id.* at 11.

The "treating physician rule" requires an ALJ to give "controlling weight to a treating physician's opinion on the nature and severity of a patient's impairment, provided that opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence." *Christian v. Berryhill*, No. 4:15-CV-3714, 2017 WL 1134152, at *10 (S.D. Tex. Mar. 27, 2017) (quoting *Newton*, 209 F.3d at 455); *Ventura*, 2017 WL 1397130, at *6 (quoting *Newton*, 209 F.3d at 455) (treating physician's opinion should be accorded "great weight"); *accord* 20 C.F.R. § 404.1527(c)(2). [11] A physician is considered a treating source based on the following definition:

> [t]reating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1527(a)(2).

The report Plaintiff relies on was a one-time evaluation. ECF No. 12-13. Thus, Dr. Roeser is a "non-treating source," which is "a physician . . . who had examined [a claimant] but does not have, or did not have, an ongoing treatment relationship

---

[11] In cases filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a treating physician. 20 C.F.R. § 404.1520c(a). Because Plaintiff filed her claim on March 1, 2016, the ALJ was required to follow the prior guidelines in conducting the RFC analysis, including giving controlling weight to a well-supported treating physician's opinion. *Courtney B.*, 2021 WL 4243512, at *8 (citing 20 C.F.R. § 404.1527(c)(2)).

with [the claimant.]" *Lindsey v. Saul*, No. 4:20-CV-303, 2021 WL 933748, at *9 n.75 (S.D. Tex. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 931694 (S.D. Tex. Mar. 10, 2021) (citing 20 C.F.R. §§ 404.1502, 416.902). An evaluation of a plaintiff "on one occasion would not qualify as an ongoing treatment relationship." *Id*. (citing *Richardson ex rel. C.R. v. Barnhart*, 338 F. Supp. 2d 749, 759 (S.D. Tex. 2004)). Therefore, the ALJ was not required to give Dr. Roeser's report controlling weight. However, Dr. Roeser is a board certified neurosurgeon.[12] As a specialist, his opinion about medical issues in his specialty is given greater weight than a generalist's opinion. *Ventura*, 2017 WL 1397130, at *6 (citing 20 C.F.R. § 404.1527(c)(5), 416.927(c)(5)).[13]

Regardless of whether Dr. Roeser is a treater or specialist, Defendant argues that there was no opinion to consider. ECF No. 28 at 10. The report is a one paragraph "treatment plan" that references a 2015 MRI; and his sole opinion was that the findings shown in that MRI were contributing to Plaintiff's low back pain. R. 662. Dr. Roeser referred her for additional x-rays and physical therapy. *Id.* Without mentioning the treatment plan, the ALJ referred to the 2015 MRI and

---

[12] Andrew C. Roeser, MD, NEUROSURGICAL GROUP OF TEXAS, https://www.neurosurgery-texas.com/physicians/andrew-c-roeser-md (last visited Mar. 30, 2023).

[13] Plaintiff failed to raise the argument that Dr. Roeser is a specialist whose opinion is entitled to more weight. Any error is therefore waived. *Courtney B.*, 2021 WL 4243512, at *7 n.9 ("Reversal of an ALJ's decision is appropriate, however, only if a plaintiff shows prejudice from the error. Plaintiff did not show prejudice because she did not raise the issue and waived any error.").

detailed its findings from the radiologist's report. R. 30; *see* R. 664-65. Thus, the ALJ considered the findings contained in the underlying objective evidence that formed the basis for the treatment plan and Dr. Roeser's opinion. Furthermore, the ALJ acknowledged that Plaintiff underwent physical therapy since 2019. R. 29, 31, 32.

Defendant also argues that the absence of a discussion of Dr. Roeser's report from the ALJ's decision is not a reversible error because the ALJ is not required to "to discuss all evidence that supports the decision or the evidence that was rejected." ECF No. 28 at 11 (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Ramirez v. Colvin*, No. 2:12-CV-262, 2014 WL 1293888, at *10 (N.D. Tex. Mar. 28, 2014)). Defendant is correct that there is no requirement that an ALJ "do an exhaustive point-by-point discussion of each piece of evidence at every step." *Lindsey*, 2021 WL 933748, at *5 (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). Additionally, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that [s]he failed to consider it[.]" *Id.* (quoting *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005)). "[C]ourts routinely decline to find reversible error when the ALJ explicitly states she considered the entire record in the decision." *Id*. (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)). Here, the ALJ stated she considered the entire record. R. 27.

Even if the absence of a discussion of Dr. Roeser's report in the ALJ's

decision was an error, Plaintiff does not show that a different result would have occurred if a discussion of the report had been included. *See* ECF No. 23 at 12-13. The ALJ's reference to the 2015 MRI findings and physical therapy indicates to the contrary. Moreover, the case was remanded to the ALJ for consideration of the 2018 MRI which contains findings that are more severe that in the 2015 MRI. Moreover, the ALJ's opinion was consistent with Dr. Roeser's one sentence opinion that the findings in the 2015 MRI contributed to Plaintiff's lower back pain. Courts will not reverse for lack of substantial evidence where the plaintiff fails to show that the alleged deficiencies caused prejudice. *Newton*, 209 F.3d at 458. Thus, Plaintiff has not met her burden of establishing that the absence of the discussion of Dr. Roeser's report as opposed to the specific evidence is an error warranting reversal. *See Isaac R.*, 2022 WL 4751131, at *8 (citing *Jones*, 691 F.3d at 734-35).

Therefore, reversal is not warranted.

### 2. *The ALJ properly considered the evidence from Dr. Rudolph.*

Plaintiff argues that the ALJ should have considered the evidence from Dr. Rudolph—her chiropractor—as an "other source" in her analysis of the severity of Plaintiff's impairments. ECF No. 23 at 18. Moreover, Plaintiff complains that the ALJ's determination that Dr. Rudolph's 2016 opinion on Plaintiff's ability to work "does not indicate what objective testing was performed" is without basis. ECF No. 23 at 13 (citing R. 34). Defendant asserts that the ALJ properly considered

Dr. Rudolph's opinion and that Plaintiff's argument thus is without merit. ECF No. 28 at 8-10.

Only an acceptable medical source 'can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.'" *Moore v. Saul*, No. 4:19-CV-00195, 2020 WL 2487046, at *3 (N.D. Tex. Jan. 31, 2020), *report and recommendation adopted*, 2020 WL 1302324 (N.D. Tex. Mar. 19, 2020) (quoting *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009)). "A chiropractor is classified as an other source," not an acceptable medical source. *Genaro M. v. Comm'r, SSA*, No. 3:19-CV-2609, 2021 WL 665539, at *3 (N.D. Tex. Feb. 4, 2021), *report and recommendation adopted sub nom. Mendoza v. Comm'r, SSA*, 2021 WL 662105 (N.D. Tex. Feb. 18, 2021) (citing 20 C.F.R. 404.1513(d)). As an "other source," Dr. Rudolph's evidence "may be used to support findings on the severity of an impairment and an impairment's effect on a claimant's ability to work." *Phyllis R. v. Berryhill*, No. 3:18-CV-478, 2019 WL 1367684, at *4 (N.D. Tex. Mar. 8, 2019), *report and recommendation adopted*, No. 3:18-CV-0478-D, 2019 WL 1358903 (N.D. Tex. Mar. 26, 2019), *aff'd sub nom. Russo v. Saul*, 805 F. App'x 269 (5th Cir. 2020) (citing *Young v. Berryhill*, 689 F. App'x 819, 822 (5th Cir. 2017)).

### a. The ALJ properly disregarded Dr. Rudolph's opinion that Plaintiff cannot work.

Here, Plaintiff focuses on the ALJ's evaluation of Dr. Rudolph's evidence as it relates to establishing the severity of Plaintiff's impairments. *See* ECF No. 23 at 18. However, Plaintiff does not designate a single impairment an acceptable medical source identified that Dr. Rudolph's evidence shows is severe, but that the ALJ failed to include as a severe impairment. *See* ECF No. 23 at 13-18.

Instead, Plaintiff points to multiple instances of Dr. Rudolph opining that Plaintiff could perform "no work" or was "unable to work." *See* ECF No. 23 at 16-17 (citing R. 2659, 2661, 2663-64, 2673-74). The determination of whether Plaintiff is able to work, however, "is a finding reserved [for] the Commissioner, and is not a medical opinion within the meaning of the regulation." *Kevin L. v. Kijakazi*, No. 4:21-CV-2160, 2022 WL 3328269, at *5 (S.D. Tex. July 27, 2022), *report and recommendation adopted*, 2022 WL 3283741 (S.D. Tex. Aug. 11, 2022) (citing 20 C.F.R. § 404.1527(d)(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)). Thus, the ALJ properly disregarded Dr. Rudolph's opinion that Plaintiff cannot work. *See Gillman v. Comm'r, SSA*, No. 4:19-CV-00704, 2021 WL 1213556, at *11 (E.D. Tex. Mar. 30, 2021) (finding that "Dr. Lee's opinion that Plaintiff is 'unable to work' is not determinative and properly disregarded by the ALJ").

**b. The ALJ properly considered Dr. Rudolph as an other source and explained the weight given.**

The ALJ "generally should explain the weight given to opinions from [other] sources." *Horton v. Berryhill*, No. CV-H-18-3341, 2020 WL 1321820, at *5 (S.D. Tex. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1321817 (S.D. Tex. Mar. 19, 2020) (citing 20 C.F.R. § 404.1527(f)(2) (2017)). "[C]onflicts in the evidence are for the ALJ, not the courts, to resolve." *Steven C. v. Kijakazi*, No. 4:21-CV-1066, 2022 WL 4490174, at *5 (S.D. Tex. Sept. 27, 2022) (citing *Newton*, 209 F.3d at 453).

Regarding Dr. Rudolph's 2019 opinion, the ALJ explained that "the opinion does not indicate what objective testing was performed to reach that opinion." R. 35. The ALJ's decision reflects that she considered Dr. Rudolph's evidence, finding it inconsistent with Dr. Rudolph's objective exam and treatment records. *See id*. at 34-35. Plaintiff challenges the ALJ's statement about objective testing is baseless and cites to evidence from Dr. Rudolph showing objective testing and examinations.[14] However, Plaintiff does not cite to any evidence showing that Dr. Rudolph connected the objective testing with his opinion on Plaintiff's ability to perform work related functions.

---

[14] *See* ECF No. 23 at 13-18 (citing R. 683-84 (9/28/2015), 688 (9/30/2015), 690-91 (10/01/2015), 693-94 (10/02/2015), 696 (10/07/2015), 699-700 (10/09/2015), 702 (10/14/2015), 1454 (7/01/2016), 1455 (7/15/2016), 1458 (7/19/2016), 1736 (9/14/2017), 1738 (9/14/2017), 1753 (5/17/2017), 2554-55 (6/08/2018), 2659-60 (8/21/2019), 2663-64 (7/24/2019), 2673-74 (12/30/19)).

Even if Plaintiff had provided such support, Plaintiff does not identify what prejudice would have resulted. *See* ECF No. 23 at 13-18. Thus, Plaintiff has failed to carry her burden to show that prejudice resulted from the error she alleges. *See Isaac R.*, 2022 WL 4751131, at *8 (citing *Jones*, 691 F.3d at 734-35).

Accordingly, the ALJ properly considered Dr. Rudolph's evidence as an other source, and she did not commit reversible error in discounting his opinion on Plaintiff's ability to work. R. 34; *see also Williams v. Saul*, No. 7:20-CV-00008, 2020 WL 8254286, at *6 (N.D. Tex. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 211812 (N.D. Tex. Jan. 21, 2021) (ALJ discussed other source's treatment and medical records and cited to those records in her decision, held ALJ sufficiently considered the other non-medical source evidence).

### D. Substantial Evidence Supports The ALJ's Treatment of Dr. Doctor's Records.

Plaintiff challenges the ALJ's treatment of Dr. Doctor's medical opinion. While acknowledging that the ALJ recited Dr. Doctor's findings in the opinion, Plaintiff claims that she failed to evaluate his medical opinion in formulating the RFC. ECF No. 23 at 21. In addition, Plaintiff complains the ALJ mistakenly stated that "Dr. Doctor did not indicate the claimant was limited in her activities" when he made no such statement. *Id*. at 20 (citing R. 28). Defendant argues that Dr. Doctor did not offer a medical opinion thus the ALJ "could not evaluate something which did not exist." ECF No. 28 at 13.

Medical opinions "are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); *see also Perez v. Comm'r, SSA*, No. 4:21-CV-594, 2022 WL 4349559, at *3 (N.D. Tex. May 2, 2022), *report and recommendation adopted sub nom. Perez v. Kijakazi*, 2022 WL 4349552 (N.D. Tex. Sept. 19, 2022) (treating source statements which gave functional limitations were medical opinions).

As Plaintiff acknowledges, the ALJ's opinion included an extensive recitation of the findings in Dr. Doctor's treatment notes, documenting Plaintiff's complaints, and his recommendation for injections which provided little relief as the condition worsened. *See* ECF No. 23 at 18-21. In fact, as Plaintiff recounted, Dr. Doctor informed her that there was nothing else he could do to improve her condition. *Id.* at 20. Despite her review of his treatment notes, Plaintiff failed to point to any medical opinion from Dr. Doctor that the ALJ failed to consider. For example, she does not point to any the record where Dr. Doctor documented a judgment about the nature and severity of her impairments, symptoms, diagnosis, prognosis, what she could still do despite her impairments, or any physical or mental restrictions that the ALJ failed to consider. No where did Plaintiff show that Dr. Doctor documented that she was limited in her activities. *See* ECF No. 23 at 18-21. Thus, Plaintiff has failed

to show a medical opinion that Dr. Doctor had that the ALJ did not consider. Moreover, the statement that Dr. Doctor did not state Plaintiff was limited in her activities appears to be a correct statement based on the ALJ's review of the records and Plaintiff has not disproved it.

Even if Plaintiff had pointed to any medical opinion, Plaintiff does not show that evaluating a medical opinion from Dr. Doctor would have changed the result. *See id*. Accordingly, Plaintiff has failed to carry her burden to show prejudice. *See Hernandez*, 2019 WL 4482942, at *7; *see also Isaac R.*, 2022 WL 4751131, at *8 (citing *Jones*, 691 F.3d at 734-35).

### E. Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Qualify as Disabled Under Listing 1.04A.

In her next challenge, Plaintiff targets the ALJ's analysis and conclusions at step three: whether Plaintiff's impairments meet the requirements of a listed impairment, such that she is presumptively disabled. ECF No. 23 at 21-28. The listings describe certain "physical and mental illnesses and abnormalities, categorized by the body system they affect." *Stockman v. Saul*, No. 4:18-cv-00508, 2019 WL 3240522, at *3 (S.D. Tex. July 18, 2019). Their purpose is to describe "impairments severe enough to prevent a person from doing any gainful activity" regardless of age, education, or work experience. 20 C.F.R. § 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).

Although the ALJ considered and rejected several listings, the only one that

Plaintiff invokes is Listing 1.04A. According to Plaintiff, the ALJ did not assess all the medical evidence, and if she had, she would have concluded that Plaintiff's degenerative disc disease satisfies the Listing 1.04A requirements. ECF No. 23 at 23-28. Defendant argues that the medical evidence supports only some of the Listing 1.04A requirements. ECF No. 28 at 13-15. In reply, Plaintiff contends Defendant failed to explain which of the prescribed criteria her conditions failed to satisfy and therefore has failed to rebut the argument. ECF No. 29 at 5.

### 1. *The step three analysis on appeal: Is there more than a scintilla of evidence to support the ALJ's finding.*

At step three of the evaluation process, the ALJ must determine whether a claimant's impairments meet or equal the listing criteria. *Steven C.*, 2022 WL 4490174, at *3 (citing *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)). If so, the claimant is presumed disabled. *Id*. (citing *Sullivan*, 493 U.S. at 532). The criteria in the medical listing are demanding and stringent, and an impairment that manifests only some elements, no matter how severely, does not qualify as a disability. *Id*. (citing *Heck v. Colvin*, 674 F. App'x 414-15 (5th Cir. 2017)) (quotation omitted); *see also Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016).

In evaluating an ALJ's step-three analysis, the question is not whether there is evidence that a plaintiff satisfies the listing criteria, but whether there is more than a mere scintilla of evidence to support the ALJ's finding that the plaintiff does not meet the listing. *See id.* (citing *Casillas v. Colvin*, No. 15-CV-12, 2016 WL 3162146,

at *4 (W.D. Tex. June 3, 2016) (rejecting argument that the record evidence indicates plaintiff's impairment(s) meet the criteria in Listing 1.04A, reviewing only whether substantial evidence supports the ALJ's determination that plaintiff's impairment did not meet or equal the listing); *Barnes v. Astrue*, No. 07-cv-4377, 2008 WL 5348225, at *11 (S.D. Tex. Dec. 22, 2008) (same)). The court cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

Listing 1.04A applies to "Disorders of the spine," including degenerative disc disease that "result[s] in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. The criteria that a plaintiff must meet includes:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss ***and,*** if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* § 1.04A (emphasis added). [15] Thus, every part of this listing must be met.

---

[15] "Effective April 2, 2021, the SSA revised the criteria in the Listing of Impairments used to evaluate claims involving musculoskeletal disorders under Titles II and XVI of the Act." *Locker v. Comm'r, SSA*, No. 1:21-CV-00823, 2022 WL 10207768, at *7 n.4 (W.D. La. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 10219758 (W.D. La. Oct. 17, 2022). "Listing 1.04 was removed without replacement and new listings were created incorporating and clarifying the provisions of the Listing 1.04 criteria." *Id.* "Accordingly, where the previous and current regulations differ, the Court considers the regulations that were in effect at the time of the ALJ's decision." *Zepeda v. Berryhill*, No. EP-17-CV-267, 2019 WL 1369947, at *4 n.2 (W.D. Tex. Mar. 26, 2019) (citing *Young v. Berryhill*, 689 F. App'x 819, 821 n.3 (5th Cir. 2017)). Here, the ALJ's final decision was rendered on April 1, 2020. R. 21. Thus, Listing 1.04 governed the ALJ's analysis

One of the reasons the ALJ gave why Plaintiff did not meet Listing 1.04 criteria was because no assistive device was used. R. 28. Plaintiff spent pages discussing the evidence that she contends shows she meets the requirements of Listing 1.04A. ECF No. 23 at 20-28. Regardless of whether she met all the requirements in that specific listing paragraph, those are not the only criteria. Plaintiff failed her burden to show that she could not effectively ambulate. *Id.* at 28.

### 2. The ALJ properly considered that Plaintiff did not use an assistive device in her evaluation of the Listing 1.04A criteria.

Plaintiff contends that the ALJ improperly included as criteria of the listing that Plaintiff did not use an assistive device, arguing the fact is irrelevant. ECF No. 23 at 27. Plaintiff's argument is misguided.

Plaintiff's argument focuses solely on the criteria contained in Listing 1.04A. But these are not the only listing criteria required. "The introductory paragraphs of Section 1.00 listings clearly state that a claimant is required to prove a loss of function as a result of a musculoskeletal impairment by demonstrating either an 'inability to ambulate effectively on a sustained basis . . ., or the inability to perform fine and gross movements effectively on a sustained basis.'" *Locker v. Comm'r, SSA*, No. 1:21-CV-00823, 2022 WL 10207768, at *8 (W.D. La. Sept. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-00823, 2022 WL 10219758 (W.D. La.

---

regarding Plaintiff's back condition. Therefore, the Court examined the ALJ's decision under the listing rules in effect at the time of the ALJ's decision.

Oct. 17, 2022) (citing 20 C.F.R. Part 404, Subpt. P., App. 1, § 1.00(B)(2)(a)).

Further, the inability to ambulate effectively must have lasted, or be expected to last,

for at least 12 months. *Id.*

> The regulations provide that an
>
> [i]nability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1). A plaintiff demonstrates

evidence of ineffective ambulation by showing the following:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* § 1.00(B)(2)(b)(2). Thus, the regulations require medical evidence showing

ineffective ambulation for at least 12 months.

Before the Commissioner, Plaintiff failed to establish she could not ambulate

effectively either showing the use of a walker, two crutches, or two canes or an

inability to walk at a reasonable pace on uneven surfaces, use public transportation,

carry out routine activities. *See id.* There is no objective medical evidence to suggest

an inability to ambulate and Plaintiff points to none. ECF No. 23 at 20-28.

To the contrary, the record shows Plaintiff ambulates effectively. Although Plaintiff shows Dr. Stuckey described her gait as "antalgic," Dr. Stuckey also noted that she "did not walk with an assistive device" and could "walk 3 blocks."[16] An antalgic gait without more does not provide evidence supporting an inability to ambulate effectively. *Cf. Haynes v. Saul*, No. CV-18-13914, 2020 WL 9720061, at *10 (E.D. La. Jan. 8, 2020) (finding no listing error when plaintiff walked with an antalgic gate and doctor prescribed one cane, "a single cane does not indicate an inability to ambulate effectively."). Moreover, Plaintiff's lack of use of an assistive device and ability to walk three blocks provides more than a scintilla of evidence of her ability to ambulate effectively. *Cf. Kashanchi v. Saul*, No. 7:19-CV-310, 2020 WL 5823154, at *16 (S.D. Tex. Sept. 11, 2020), *report and recommendation adopted*, No. 7:19-CV-310, 2020 WL 5819898 (S.D. Tex. Sept. 30, 2020) (deciding that substantial evidence supported the ALJ's finding that the plaintiff failed to meet Listing 1.02 when plaintiff used a walker without prescription on occasion and used crutches to help with ambulation without showing either device was needed to ambulate).

Because Plaintiff did not present evidence that she met all the Listing 1.04A requirements, any failure of the ALJ in her explanation of her rejection was harmless error. *See Faulkner v. Kijakazi*, No. 4:20-CV-02565, 2022 WL 3356412, at *3 (S.D.

---

[16] ECF No. 23 at 26 (citing R. 2573, 2578) (7/12/18).

Tex. Aug. 15, 2022), *report and recommendation adopted sub nom. Faulkner v. Saul*, 2022 WL 3995473 (S.D. Tex. Aug. 31, 2022) (finding harmless error when ALJ failed to explain rejection of Listing 1.04A because plaintiff presented no evidence that he met all the requirements); *cf. Michael L. v. Berryhill*, No. 3:18-CV-0010, 2019 WL 1243866, at *4 (N.D. Tex. Feb. 20, 2019), *report and recommendation adopted sub nom. Layton v. Berryhill*, No. 3:18-CV-0010, 2019 WL 1244076 (N.D. Tex. Mar. 18, 2019) (granting defendant's motion for summary judgment because plaintiff failed to point to evidence that he needed a walker, two canes, or two crutches to ambulate to meet the listing).

Therefore, even if there was an error in the ALJ's explanation of her rejection of Plaintiff meeting Listing 1.04A requirements, it was harmless, because substantial evidence supports the step three analysis and reversal is not warranted.

### 3. *Remand for the ALJ to develop the record on Listing 1.04A criteria is not warranted.*

Plaintiff asserts that "the ALJ should also be ordered to develop the record and obtain medical expert testimony." ECF No. 23 at 28. However, "[t]he ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability." *Myers v. Saul*, No. SA-20-CV-00445, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021) (quoting *Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008)) (cleaned up). Here, "there is no indication that the record was . . . so inadequate as to prohibit a proper evaluation of

Plaintiff's impairments, and Plaintiff failed to show [medical expert testimony] would have led to a more favorable decision." *Lori Ann T. v. Saul*, No. 2:19-CV-132, 2020 WL 13430181, at *7 (N.D. Tex. Sept. 21, 2020). Accordingly, remand for the ALJ to develop the record on Listing 1.04A is not warranted.

### F. Substantial Evidence Supports the ALJ's Decision to Omit Additional Limitations for Plaintiff's Sitting, Standing, Hazy Vision, and Migraine Headaches.

Plaintiff claims the ALJ failed to consider all her limitations in formulating the RFC. ECF No. 23 at 28. Plaintiff argues the RFC must include all limitations supported by the record, even those that are not severe. *Id*. (citing 20 C.F.R. §§ 404.1545(e)). Specifically, Plaintiff asserts that the ALJ did not consider her sitting and standing problems, vision problems, and migraine headaches. ECF No. 23 at 28-30; ECF No. 29 at 6-7. Defendant responds that the ALJ properly considered all the medical evidence, and the ALJ conducted an appropriate assessment of Plaintiff's impairments. ECF No. 28 at 16.

Although the ALJ did not specifically attribute any functional limitations to Plaintiff's sitting, standing, vision, and migraine headaches, the ALJ's decision reflects that she considered each in making the RFC determination. R. 33-35. First, the ALJ's decision shows that she determined Dr. Rudolph's July 6, 2016 recommendation for sitting and standing limitations were not credible.[17] The ALJ

---

[17] R. 35 (citing R. 1447 (7/06/2016).

explained that she found the recommendation was not given any context and was inconsistent with Dr. Rudolph's objective exam and treatment results, showing full range of motion and motor movement indicating treatment progress.[18] "The ALJ is the sole arbiter of the credibility of the witnesses." *Roger C. v. Kijakazi*, No. 4:20-CV-01807, 2021 WL 4243582, at *4 (S.D. Tex. Sept. 18, 2021) (citing *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001)). Without medically determinable evidence supporting the specific sitting and standing limitations that Dr. Rudolph recommended, Plaintiff has failed to establish that not including additional limitations for sitting and standing was error. *See John David L. v. Saul*, No. 4:19-CV-02142, 2021 WL 2673198, at *6 (S.D. Tex. June 29, 2021) (citing *Anthony v. Sullivan*, 954 F.2d 289, 295–96 (5th Cir. 1992)).

Second, the ALJ's decision also shows that she considered Plaintiff's medical records regarding her vision, including her March 20, 2017 visit to her ophthalmologist Dr. Al-Zubidi and her May 11, 2017 follow-up.[19] The ALJ noted that, although at the initial visit Plaintiff complained of blurred vision, watery eyes, headaches, and swelling of the optic nerves in both eyes, Plaintiff denied loss of vision or double vision.[20] At the follow-up, Plaintiff's vision was 20/30 and the

---

[18] R. 35 (citing R. 1454 (7/01/2016); 1456 (7/15/2016)).

[19] R. 33 (citing R. 1679-82 (3/20/2017); R. 2209-11 (5/11/2017); R. 2480 (5/11/2017)).

[20] R. 33 (citing R. 1679-82 (3/20/2017)).

Amsler Grid Test and Confrontation Visual Field Test were normal in both Plaintiff's eyes.[21] "The ALJ is not required to incorporate limitations in the RFC that the ALJ did not find the record supported." *Garcia v. Kijakazi*, No. 2:22-CV-00055, 2023 WL 2186440, at *2 (S.D. Tex. Feb. 23, 2023). Here, objective medical testing shows Plaintiff has normal vision, and the medical records do not show any limitations on Plaintiffs' ability to work based on vision.[22] Therefore, the ALJ was not required to include vision limitations, and substantial evidence supports the ALJ's omission of a specific limitation for Plaintiff's vision.

Third, the ALJ's decision shows that she considered Plaintiff's migraine headaches. R. 33. The ALJ's decision addresses Dr. Al-Zubidi's treatment notes that part of Plaintiff's headache was related to a migraine headache, and he instructed Plaintiff to drink water and continue on her prescription.[23] The ALJ's decision also addresses a medical record from Plaintiff's visit to the emergency department for a migraine headache, showing the condition improved, she was stable at discharge, and she was given a prescription and instructions to take ibuprofen as needed for pain. R. 33 (citing R. 2121, 2124 (1/04/2018)). The decision further references Dr. Lee's notes, documenting an MRI and MRV with no signs of sinus thrombosis.

---

[21] R. 33; R. 2209, 2211 (5/17/2017).

[22] *See* R. 1679-82 (3/20/2017); R. 2209-11 (5/11/2017); R. 2480 (5/11/2017).

[23] R. 33 (citing R. 1679 (3/20/2017)).

R. 33 (citing R. 2279 (1/09/2018)).  When there is no objective medical evidence to support a plaintiff's contention that the ALJ should have added limitations for migraine headaches, the ALJ's decision is supported by substantial evidence. *Cooper v. Kijakazi*, No. 4:22-CV-118, 2023 WL 2467880, at *2 (N.D. Miss. Mar. 10, 2023) (finding the ALJ's decision omitting a specific limitation for the plaintiff's migraine headaches was supported by substantial evidence when there was no objective medical evidence to support a specific limitation). Although the ALJ discussed medical records that document her migraines,[24] and Plaintiff made subjective complaints of symptoms from migraine headaches,[25] she does not show that the record contains objective medical evidence supporting any specific limitations for her migraine headaches. *See* ECF No. 23 at 29-30; ECF No. 29 at 7. Thus, the ALJ did not err in omitting a specific limitation for the migraine headaches. *See Cooper*, 2023 WL 2467880, at *2.

Moreover, in *Steven C.*, the court found that "[a]lthough the ALJ did not specifically attribute any functional limitations to Plaintiff's headaches," the

---

[24] Additionally, the record shows that on April 18, 2017 Dr. Tang noted Plaintiff had a headache but the physician doubted it was a migraine as Plaintiff had blurry vision and double vision intermittently. R. 2516 (4/18/2017). Further, the Court notes Plaintiff listed this record as being from "April 2019." *See* ECF No. 23 at 29. However, although the record notes "4-09-2019" at the top, the record lists the encounter was performed and documented on April 18, 2017. Therefore, the Court considers this record as being from April 18, 2017.

[25] *See, e.g*., R. 128 (Plaintiff testified at the hearing that her migraine headaches last three hours during which time she cannot concentrate or be exposed to lights and must lay down with no light until it goes away); R. 131 (Plaintiff also testified that she lays down two to three times a day for two hours each time).

functional limitations in the RFC took that impairment into account. *Steven C.*, 2022 WL 4490174, at *9. Here, like *Steven C.*, there is nothing that indicates that the ALJ's functional limitation of sedentary work does not account for Plaintiff's limitations for sitting, standing, vision, and migraine headaches. *Cf. id.* (RFC for light work accounts for headaches). Accordingly, substantial evidence supports the ALJ's decision to omit specific limitations for sitting, standing, vision, and migraine headaches.[26]

But even if the ALJ had not considered each of the limitations, although Plaintiff suggests a generic sit/stand option and the need to avoid work requiring good vision, Plaintiff does not identify the specific sit/stand option and the specific limitations for her vision and migraine headaches that she believes should have been included and that the record supports, beyond the limitation of sedentary work. *See*

---

[26] Insofar as Plaintiff argues that the ALJ erred in not finding her vision impairment and migraine headaches severe, Plaintiff cites to the severity requirement but not the durational requirement for a "severe" finding. *See* ECF No. 23 at 29-30 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). Plaintiff has the burden of proving that her medical conditions qualify as severe. *Todd C.*, 2021 WL 2651166, at *4 (citing *Stone*, 752 F.2d at 1105). Proving severity results in a two-step process: the durational requirement and the severity requirement. *Id.* For the durational requirement, "a claimant need only show that an alleged impairment has lasted or can be expected to last for the twelve-month period" not that the impairment was itself severe for the entirety of the twelve months. *Id.* (quoting *Craig v. Berryhill*, No. 17-CV-1715, 2019 WL 1387696, at *5 (M.D. La., Mar. 27, 2019)). For the severity requirement, a claimant must show that the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* (quoting *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, *11 (S.D. Tex. Nov. 10, 2011)). Here, Plaintiff did not brief the durational requirement. *See* ECF No. 23 at 29-30. Therefore, the argument is waived for inadequate briefing. *See O'Brien v. Methodist Hosp.*, No. 4:20-CV-4084, 2022 WL 18864879, at *9 (S.D. Tex. Dec. 23, 2022), *report and recommendation adopted sub nom. Obrien v. Methodist Hosp.*, 2023 WL 2249985 (S.D. Tex. Feb. 24, 2023) (citing *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003).

ECF No. 23 at 28-30; ECF No. 29 at 6-7. Thus, Plaintiff has failed to carry her burden to show that the failure to include the additional limitations caused her prejudice. *See Isaac R.*, 2022 WL 4751131, at *8 (citing *Jones*, 691 F.3d at 734-35); *see also Steven C.*, 2022 WL 4490174, at *9.

## CONCLUSION

The Court **DENIES** Plaintiff's motion for summary judgment, ECF No. 23, and **GRANTS** Defendant's motion for summary judgment, ECF No. 27. The Commissioner's determination that the Plaintiff is not disabled is **AFFIRMED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, on March 31, 2023.

_Dena Palermo_
_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**